Cordie V. SALYER, Plaintiff,

v.

Caspar WEINBERGER, etc.,
Defendant.

No. CIV-2-74-27.

United States District Court,
E. D. Tennessee,
Northeastern Division.

Nov. 4, 1974.

E. G. Moody, Kingsport, Tenn., for plaintiff.

John L. Bowers, Jr., U. S. Atty., Knoxville, Tenn., for defendant.

## MEMORANDUM OPINION

NEESE, District Judge.

This is an action for the judicial review of a final decision of the defendant administrator, 42 U.S.C. § 405(g), denying the plaintiff's claim for a period of disability and disability benefits under the Social Security Act. 42 U.S.C. §§ 416(i), 423. The defendant moved for a summary judgment. Rule 56(b), Federal Rules of Civil Procedure.

The plaintiff filed an application for such benefits on November 24, 1972, alleging that she first became unable to engage in substantial work on March 8, 1971, due to back and leg impairments. The claim was denied both initially and on reconsideration. An administrative law judge denied the application on November 9, 1973, and this became the final decision of the defendant administrator when an appeals council denied the plaintiff's request for a review.

The administrative law judge found:

1. The [plaintiff] had met the special earnings requirements of the Act on March 8, 1971, the alleged disability onset date, and continued to meet them through June 30, 1971, but not thereafter.

2. The [plaintiff] is 54 years of age, completed the 9th grade in school and has had work experience as a soda fountain manager, supervisor of a coin laundromat, and short order cook. All these jobs required standing, walking, stooping, bending and lifting.

3. The medical evidence establishes that during the period of time in question, the [plaintiff] suffered from a back impairment which was diagnosed by her treating physician as minimal arthritic changes, lumbar spine, and that she suffered some menopause symptoms. These impairments caused some pain and nervousness. These symptoms respond to medication and treatment.

4. The record does not show that the [plaintiff] on or prior to June 30, 1971, was suffering from any other impairment which would impose any significant limitation on her vocational functional abilities.

5. The evidence shows that the [plaintiff], on account of her impairments on or prior to June 30, 1971, was prohibited from engaging in her usual occupations.

6. The evidence establishes that the [plaintiff], in spite of her combined impairments and resulting functional limitations, retained the capacity to engage in substantial activity in jobs of a light sedentary nature such as described by a vocational expert.

7. The evidence establishes that jobs of a light sedentary nature which are within the [plaintiff's] residual vocational abilities, exist in significant numbers in the several regions of the country.

8. The evidence fails to establish that the [plaintiff's] impairments considered separately and in combination, prevented her from engaging in substantial gainful activity for any continuous period, on or prior to June 30, 1971, which lasted or could be expected to last for at least twelve months.

9. The [plaintiff] was not under a "disability" as defined in the Act, as amended, at any time on or prior to June 30, 1971, when she was last insured under the Act for disability purposes.

■ The only issue for determination by this Court is whether the Secretary's findings are supported by substantial evidence. Ingram v. Richardson, C.A.6th (1972), 471 F.2d 1268, 1271[4]. The plaintiff had the burden of proving her disability within the meaning of the Act. 42 U.S.C. §§ 416 (i), 423; Osborne v. Cohen, C.A.6th

(1969), 409 F.2d 37, 39[2]. " * * * We have defined 'substantial evidence' as 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' Consolidated Edison Co. v. Labor Board, [(1938)] 305 U.S. 197, 229, 59 S.Ct. 206, 217, 83 L. Ed. 126. '[I]t must be enough to justify, if the trial were to a jury, a refusal to direct a verdict when the conclusion sought to be drawn from it is one of fact for the jury.' Labor Board v. Columbia Enameling & Stamping Co., [(1939)] 306 U.S. 292, 300, 59 S.Ct. 501, 83 L.Ed. 660, 665, * * * " Consolo v. Federal Maritime Com., (1966), 383 U.S. 607, 619–620, 86 S.Ct. 1018, 16 L.Ed.2d 131, 140–141 (headnote 9). Applying these criteria, there is no substantial evidence in this record to support the latter four of the aforementioned findings of the administrative law judge.

There is no conflict in the medical evidence herein. It is undisputed that the plaintiff suffered from back impairments since the mid-1950's, which impairments were aggravated by an accident on February 2, 1971. Summaries from Dr. Hobart M. Hampton, a general practitioner, show that the plaintiff was treated on January 7, 1971 and May 5, 1971 for back pain and numbness in her right leg. The following report from Dr. Robert L. Banner, a general surgeon, of November 15, 1972 provides a good summary of the plaintiff's past and present condition:

* * * * * *

I saw Mrs. Cordie Salyer on November 8, 1972 with history of falling down over a bread drawer at Armours Drug Store on February 2, 1972 [sic: 1971]. She was first seen by Dr. Golden and then referred to Drs. Shobe Strang & Maloy. She had prior back injuries in mid 1950's and in 1966. She had recovered and had been working as soda counter employee with little if any difficulty

since 1971 until February 2, 1972 [sic: 1971].

She complains of low back pain in right lumbar region and tingling in her right foot and leg.

Examination indicates limitation of motion in all planes of lumbar region, muscle spasm in right lumbar area and inability to walk on toes and heels without referred pain to right hip and right lumbar region. X-rays of lumbar area are not remarkable.

Diagnosis: Severe lumbar sprain superimposed on prior soft tissue injury. The tingling and numbness is related to nerve root irritation from the severe sprain.

This lady has had excellent treatment and has reached maximum recovery. As a result of the accident of February 2, 1972 [sic: 1971], superimposed on her pre-existing condition, it is my opinion that she is permanently unemployable on the labor market for work available to a woman of her age with a tenth grade education.

\* \* \* \* \* \*

On December 11, 1972, Dr. Joseph K. Maloy, an orthopaedic surgeon and the plaintiff's principal personal physician, responded to a social security counselor's questionnaire as follows:

(1) Expected date of return to work was indefinite.

(2) With maximum improvement the plaintiff could return to only sedentary work.[1]

(3) X-ray findings showed minimal arthritic changes, lumbar spine.

(4) She cannot do stooping, bending, lifting, activities with her back.

(5) Joints affected were lumbar spine, 10 to 20 per cent physical impairment.

(6) There were no sensory, motor, and/or reflex abnormalities.

Dr. Maloy opined on April 5, 1973 that Mrs. Salyer was permanently unable to be gainfully employed for medical reasons. The final medical report is of November 11, 1973 from Dr. Hampton and states that Mrs. Salyer was then being treated for arthritis and peptic ulcer.

Although the administrative law judge found that Mrs. Salyer was unable to return to her usual occupation, he also found, based on the testimony of Dr. Norman Hankins, a vocational expert, that Mrs. Salyer had the residual capabilities to perform work functions as described by Dr. Hankins. However, the following statements by Dr. Hankins were apparently ignored: " \* \* \* All of these jobs certainly would require any employee to be on the job for a continuous eight-hour period on a fairly regular basis. The same would be true of any jobs of which I am familiar, that exist in the economy. And, it would be my opinion that one who could not be on the job for those periods on a regular basis would not be able to perform any duties which I've described. \* \* \* " And, in response to a question by the plaintiff's attorney, Dr. Hankins stated: " \* \* \* [The workers are] required to either be constantly sitting or standing while the job is being performed. There is no opportunity that I know of where any of these employees are permitted to lie down during the workday. \* \* \* "

Earlier, the plaintiff had stated: " \* \* \* And I'm real bad to fall; I could be standing anywhere and just fall, my legs are blue all over now. \* \* \* " Later, Mrs. Salyer stated that she was taking pain medication for her back pain, and when asked if it helped, she responded: " \* \* \* Well, some. \* \* \* " Later, she reiterated that she sometimes fell for no apparent reason

---

1. There was no space on the form to indicate any lesser amount of work capabilities.

and needed help getting out of the bathtub a few times. Finally, Mrs. Salyer stated that: "* * * I can't sit very long at a time, my leg goes numb, and I can't stand very long at a time. * * *" All of the foregoing statements by Mrs. Salyer are uncontradicted in this record. Therefore, there is no substantial evidence herein to support the aforementioned finding that the plaintiff retained the residual capacity to engage in light and sedentary activity.

■ The disability provisions of the Act are not to be strictly construed to deny disability but are to be liberally construed in favor of disability. Davidson v. Gardner, C.A.6th (1966), 370 F. 2d 803, 808[1]. "* * * If a person is unable except under great pain to engage in any substantial gainful activity in which might be employable, taking into consideration his age, training, work experience and physical and mental capacities, he is deemed disabled for purposes of the Social Security Act. * * *" Sayers v. Gardner, C.A.6th (1967), 380 F.2d 940, 948[2]. "* * * The fact that there is such a subjective symptom as pain of claimant for social security benefits does not mean that it ranks as a lesser type of disability. * * *" Ibid. at [4]. "* * * It is no answer that the claimant may be theoretically capable of performing some one of the * * * jobs contained in an exhaustive list covering places and circumstances utterly irrelevant to her situation. * * *" Davidson v. Gardner, supra, at 370 F. 2d at 829[17]. It was not necessary for Mrs. Salyer to be bedridden or completely helpless to be entitled to benefits. Berry v. United States (1941), 312 U.S. 450, 455, 61 S.Ct. 637, 85 L.Ed. 945, 948–949[2].

The motion of the defendant for a summary judgment lacks merit and hereby is Denied. Rule 56(c), Federal Rules of Civil Procedure. The Court will consider any motion for a summary judgment served by the plaintiff within a reasonable time herefrom. Rule 56(a), Federal Rules of Civil Procedure.