Dovie **MILLER**, Plaintiff,

v.

Caspar **WEINBERGER**, etc., Defendant.

Civ. A. No. 2954.

United States District Court,
E. D. Tennessee,
Northeastern Division.

June 14, 1973.

Lewis Merryman, Elizabethton, Tenn., for plaintiff.

John L. Bowers, Jr., U. S. Atty., Robert E. Simpson, Asst. U. S. Atty., Knoxville, Tenn., for defendant.

## MEMORANDUM OPINION AND ORDER

NEESE, District Judge.

This is an action for judicial review of the decision of the defendant administrator, 42 U.S.C. § 405(g), denying the plaintiff's claim for disability insurance benefits under the Social Security Act. 42 U.S.C. §§ 416(i), 423. Both parties have moved for a summary judgment, Rule 56, Federal Rules of Civil Procedure, and agree that the sole issue for determination is whether the Secretary's final decision that the plaintiff was not entitled to disability benefits or to a period of disability as of March 31,

1963, the date on which she last met the coverage requirements of the Act, is supported by substantial evidence.

The plaintiff originally filed an application for benefits under the Act on November 6, 1957, which was denied on August 15, 1959. She reapplied for benefits on February 1, 1961, which was again denied on May 1, 1961. The plaintiff did not pursue any further remedies following the denial of each of these applications and same are not now before this Court. Sangster v. Gardner, C.A. 6th (1967), 374 F.2d 498, 500 [1]. The plaintiff filed her current application for benefits on July 23, 1971. The claim was denied initially and on reconsideration. A hearing was held on May 15, 1972, and on July 26, 1972 a hearing examiner denied her application. This became the final decision of the defendant administrator on September 21, 1972 when an appeals council denied her request for a review of the examiner's decision. The hearing examiner found:

\*  \*  \*  \*  \*  \*

1. The [plaintiff] met the special earnings requirements of the Act on January 15, 1961, the alleged disability onset date, and continued to meet them through March 31, 1963, but not thereafter.

2. The [plaintiff] was born September 30, 1914, completed the fourth grade in school and last worked as a housekeeper. She also had some work experience as a maid at a hospital and has worked at a snack bar where she washed dishes and helped with the cooking.

3. The evidence discloses that the [plaintiff] had hypertension and nervousness on and prior to March 31, 1963, the date on which she last possessed the required insured status for disability purposes, but the evidence fails to establish that these impairments or any other diagnosed impairments had reached a level of severity on or before March 31, 1963, which would prevent her from engaging in her former work or in substantial gainful activity on that date or for any continuous period prior thereto lasting for at least 12 months.

4. The [plaintiff] was not under a "disability," within the purview of the Social ·Security Act, as amended, on or at any time prior to March 31, 1963, the date on which the [plaintiff] last met the special earnings requirements of the Act.

█ The plaintiff had the burden of proof for establishing that she was disabled within the meaning of the Act and that such disability commenced at a time when she met the coverage requirements of the Act. Harrison v. Richardson, C.A. 6th (1971), 448 F.2d 638, 639 [1]. There appears to be no doubt that the plaintiff is currently disabled within the meaning of the Act.

On December 28, 1971, she was examined by Dr. A. Sheldon Gelburd, a clinical psychologist, who on January 7, 1972, reported:

\*  \*  \*  \*  \*  \*

A full scale I. Q. of 48 was obtained on the WAIS with a verbal I. Q. of 54 and performance I. Q. score of 49. This is estimated at least 30 points below her functioning level and probably even more than that. Mrs. Miller was completely ·unable to manipulate geometrical objects of any size or shape, such was her fremor [sic]. This was also true of the Bender in which she tried to use a pencil but her hand shook extremely rapidly at about 1 to 2 feet length up and down, and she could only make dots on the paper, nothing starting to resemble the reproduction of the geometrical design on the Bender cards. The thought processes appeared impaired also. Concerning the Rorscach [sic: Rorschach] she gave only two responses, being "a stump", on card 3 and another on card 7.

The impression is that Mrs. Miller actually should be in á psychiatric hospital, not necessarily a psychiatric hospital but one dealing with organic brain deterioration. There is strong evidence that Mrs. Miller has organic

brain impairment, and of course if she is not put on any type of anti-depressant she could experience such strong suicidal inclinations. She is at the involutional age and this combined with her extreme helplessness could trigger off a serious suicide attempt. Perhaps, however she is too confused and unable to use her hand coordination smoothly enough to actually go through the complications of killing herself although an overdose of medication might be within her abilities. This woman should be treated as soon as possible. * * * Again, diagnostic impression is brain deterioration, severe resulting in extreme depression and anxiety. Prognosis appears extremely poor under any conditions.

    *     *     *     *     *     *

On April 14, 1972, the plaintiff was examined by Dr. Dillard M. Sholes, Jr., a gynecologist, who found her to be " * * totally and permanently disabled. * *."

▮ The problem, of course, is determining at what point in time the plaintiff actually became disabled within the meaning of the Act. Establishment of her disability is not precluded by the fact that a true and correct diagnosis of same was not made until some time following the end of her period of entitlement. Berven v. Gardner, C.A. 8th (1969), 414 F.2d 857, 861 [2]. In Dr. Sholes' opinion: "* * * This patient is physiologically older than her stated age. There are many neurologic manifestations caused by generalized vascular disease. She has a long standing hypertension (Chronic high blood pressure) which can be documented as far back as 12/3/59. * * *." Again on May 11, 1972, Dr. Sholes reported: " * * * Records from my office and from the Carter County Memorial Hospital verify that the above captioned patient was suffering with severe cardiovascular disease and hypertension *as early as 1961, and that she was disabled as of that date.* [Emphasis supplied] * * *."

▮▮ The only other medical opinions relating to the period before March 31, 1963 are those of Dr. Ben D. Hall, an internist, and Dr. W. Rutledge Miller, another internist, both of whose opinions reinforce Dr. Sholes' opinion that the plaintiff was disabled before said date. On July 16, 1959, Dr. Hall reported that he had examined the plaintiff on July 6, 1959 on a complaint of "nervousness." Dr. Hall stated:

    * * * She has had known hypertension for the past year. This has been symptomatic with dizziness and headache which occur constantly and varies in intensity. Sometimes she is so dizzy that "she can't stand-up." * *

On March 23, 1961, Dr. Miller reported that he had examined the plaintiff three days earlier. It was his opinion that the plaintiff might be helped: " * * * with proper medical supervision and psychotherapy. * * *" In other words, Dr. Sholes' expert medical opinion, that the plaintiff was disabled prior to the date she last met the coverage requirements of the Act, is not repudiated by any substantial evidence to the contrary. In fact, it is supported by other evidence, such as the opinions of Drs. Hall and Miller and the testimony of the plaintiff and her daughter. As such, it should not be lightly set aside. Murphy v. Gardner, C.A. 8th (1967), 379 F.2d 1, 8 [8].

" * * * Substantial evidence means more than a scintilla; it is such relevant evidence as a reasonable mind would accept as adequate to support a conclusion. * * * It has been noted that the Social Security Act is remedial in nature, and that a liberal construction in favor of disability, if such is reasonably made out, is therefore required. * *" Combs v. Gardner, C.A. 6th (1967), 382 F.2d 949, 956 [6, 7]. Considering the fact that the record now contains all of the competent medical evidence that can be obtained pertaining to the plaintiff's condition prior to March 31, 1963, there is no reason to remand the case for the taking of further testimony. The testimony of the plaintiff's attending

physician states that she was disabled prior to said date. There is not substantial evidence to the contrary.

Accordingly, judgment will enter overruling the defendant's motion for summary judgment, granting the plaintiff's motion for same, and remanding the action to the defendant Secretary, with directions that the Social Security Administration award the plaintiff the disability insurance benefits she claims.