William H. MEZA, Plaintiff,

v.

Patricia Roberts HARRIS, Secretary of Health and Human Services, Defendant.

Civ. No. 79–1203PA.

United States District Court, D. Oregon.

Oct. 29, 1980.

Steven C. Yates, Malagon & Yates, Eugene, Or., for plaintiff.

Sidney I. Lezak, U. S. Atty., Judith D. Kobbervig, Asst. U. S. Atty., Portland, Or., for defendant.

## OPINION

PANNER, District Judge:

Plaintiff brings this action under section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), for review of a final decision of the Secretary of Health and Human Services denying his application for disability insurance benefits. I remand for further proceedings.

Plaintiff alleges that he became disabled in December 1975, at the age of 49, because of eye problems, degenerative arthritis in his back and knees, and a deformity of his right hand. His application was denied initially and on reconsideration by the Bureau of Disability Insurance of the Social Security Administration.

A hearing took place on March 28, 1979 at Eugene, Oregon. Plaintiff was represented by a member of the Southwest Indian Health Project. The Administrative Law Judge (ALJ) heard testimony from the plaintiff and his friend and determined that the plaintiff had failed to meet his burden of proving that he was under a disability within the meaning of the Act. The Appeals Council affirmed.

Plaintiff is a Native American who worked as a welder from age 18 until age

44, mostly in the Los Angeles urban area. His last insured date for disability insurance benefit purposes was September 30, 1976. Accordingly, he must establish that his medically determinable impairments have prevented him from performing substantial gainful activity since on or before September 30, 1976.

Plaintiff testified that during the time he lived and worked in Los Angeles he was not treated by white doctors. He had no health benefits through his employment, and health facilities were not available to urban Indians. Instead, plaintiff used Indian medicine and spiritual treatment. In 1978, a friend finally was able to persuade plaintiff to see a doctor and to file this claim for disability benefits. No medical evidence was presented on his condition at the time his insured status expired on September 30, 1976.

Accordingly, the Administrative Law Judge determined that:

> [I]t can be concluded that claimant is clearly prevented from work activity starting in the summer of 1978 when he finally saw a doctor. His moderately severe to severe arthritis in mid–1978 suggests less severe osteoarthritis previously since it is slowly progressive. Therefore, he probably had some degenerative arthritis in 1976. However, there is not medical evidence indicating how severe it was at that time or how if [sic] affected his ability to function. Claimant's credible testimony was that he was having considerable trouble then. Unfortunately, medical evidence does not document or corroborate that. There is none from 1968 to August of 1978, not even evidence from any sort of Indian medicine person.

The ALJ concluded that the underlying condition which allegedly caused plaintiff's disability was not medically documented as of his last insured date and that there was insufficient evidence to establish plaintiff's disability within the meaning of the Act.

In reaching his conclusions, the ALJ relied on a regulation promulgated by the Social Security Administration concerning failure to submit evidence:

> An individual shall not be determined to be under a disability unless he furnishes such medical and other evidence thereof as the Administration may require. Religious or personal scruples against medical examinations, tests, or treatment shall not excuse an individual from submitting evidence of disability.

20 C.F.R. § 404.1530. Because of the lack of medical evidence with relation to the critical time period, the ALJ found that plaintiff did not have any "medically determinable physical or mental impairment." 20 C.F.R. § 404.1501(b)(1)(i).

The ALJ used an inappropriate legal analysis in reaching his conclusion. The Social Security Act and the Regulations require that the plaintiff prove a medically determinable impairment which prevents him from engaging in any substantial gainful activity. Plaintiff met this burden and the ALJ so found. From 1978 onward it is clear that plaintiff suffered and continued to suffer from disabling arthritis. The only question arises as to the *onset date* of the disability. This is a factual issue, which can be established by other means if contemporaneous medical records are for some reason unavailable. Having established a medically determinable disability, the plaintiff should have been encouraged to present other types of proof to establish the onset date. This is especially true where, as here, the plaintiff was not represented by counsel. In such cases, the ALJ must be particularly diligent in developing the facts. *Cox v. Califano*, 587 F.2d 988, 991 (9th Cir. 1978).

Absence of medical records to establish an onset date does not necessarily mean the disability is not medically determinable. In a case with analogous facts, the district court stated:

> The hearing examiner in his opinion and the government in its brief relied to a considerable extent on the absence of the medical records for the early years of Mrs. Huffstettler's illness. In fact the hearing examiner ... took the position that Mrs. Huffstettler's disability in the early days is not "medically determina-

ble" because the medical records have been lost. Of course the definition means no such thing. "Medically determinable" as used in the definition obviously means a disability of a type that can be determined by medical processes. The fact that the early determinations made at the onset of the disability have been destroyed by act of God does not alter the fact that her disability is of a medically determinable nature.

*Huffstettler v. Celebrezze,* 216 F.Supp. 604, 608–09 (W.D.Va.1963). The problem presented here is determining at what point in time the plaintiff actually became disabled. Establishment of his disability is not precluded by the fact that a diagnosis was not made until some time following the end of his period of entitlement. *Miller v. Weinberger,* 367 F.Supp. 456, 458 (E.D.Tenn. 1973).

On May 15, 1967 a radiology report by Dr. A. Z. Geller indicated mild changes of osteoarthritis in plaintiff's left knee. On August 24, 1978 Dr. Harikian found severe degenerative disease in both knees and the spine, and recommended an orthopedic consultation. On August 29, 1978 Dr. Indek found severe degenerative arthritis in plaintiff's back and neck. On December 11, 1978 Dr. Streitz diagnosed degenerative arthritis of plaintiff's knees and back. Plaintiff testified that he quit work at the age of 44 because of his inability to lift and stand, that he was working in San Diego when his arthritis was discovered, and that he at one time received cortisone in San Diego. The ALJ found plaintiff's testimony credible. Ms. Gronleff testified that when she met the plaintiff, in the spring of 1977, his condition was such that he could not sit, stand or walk without severe discomfort. A letter from John Rolling Thunder Pope, a spiritual advisor, states that since December 1968 the plaintiff "tried such remedies as the use of sweat lodges and seeing various medicine men," and that his physical condition is very bad.

The foregoing evidence was uncontradicted. Ms. Gronleff's testimony alone establishes that plaintiff's disability was severe in the spring of 1977, only a few months after his cut–off date. The subjective evidence of the claimant and his witnesses is to be given great weight, especially when such evidence is uncontradicted in the record. *Kelly v. Matthews,* 420 F.Supp. 359, 363 (W.D.N.C.1976). The ALJ assumed that the lack of medical evidence for the period prior to September 1976 was determinative and did not give the proper weight to the other evidence presented.

On remand, it may be that medical testimony or reports will be able to reflect with some degree of medical certainty how long the plaintiff has been disabled. The record is undisputed that at the time of the 1978 medical examinations and the 1979 hearing the claimant was totally disabled. The plaintiff, who is now represented by competent counsel, should be able to fully develop medical opinion as to whether or not he was actually disabled during the critical period at issue. *Sellars v. Secretary of HEW,* 458 F.2d 984, 986 (8th Cir. 1972). The Secretary must also consider any lay testimony as to plaintiff's physical condition prior to September 1976.

The action is remanded for further proceedings consistent with this opinion.